IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BILL FRANK SCACCIA,<br><br>     Movant,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | **MEMORANDUM DECISION AND ORDER DENYING § 2255 MOTION**<br><br>Civil No. 4:20-cv-00103-DN<br>(Crim. No. 4:19-cr-00115-DN)<br><br>District Judge David Nuffer |

Movant Bill Frank Scaccia seeks to vacate, set aside, or correct the sentence in his underlying criminal case[1] pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").[2] Mr. Scaccia asserts four claims for relief based on ineffective assistance of counsel.[3] The government opposes the § 2255 Motion arguing that Mr. Scaccia cannot establish that his counsel's performance was constitutionally deficient or prejudicial.[4]

Mr. Scaccia's claims are unsupported and plainly contrary to the evidence and record in his underlying criminal case. The briefing on Mr. Scaccia's § 2255 Motion, attached exhibits and evidence, and the record of the underlying criminal case conclusively demonstrate that Mr. Scaccia cannot establish that his counsel's performance was constitutionally ineffective. Therefore, an evidentiary hearing is unnecessary and Mr. Scaccia's § 2255 Motion[5] is DENIED and DISMISSED with prejudice. A Certificate of Appealability is also DENIED.

---

[1] *United States v. Scaccia*, No. 4:19-cr-00115-DN (D. Utah) ("Criminal Case").

[2] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), docket no. 1, filed Sept. 18, 2020.

[3] *Id*. at 4-9.

[4] United States' Response in Opposition to Movant's § 2255 Motion ("Response"), docket no. 4, filed Nov. 10, 2020.

[5] Docket no. 1, filed Sept. 18, 2020.

**BACKGROUND** ........................................................................................................................ 2
**DISCUSSION** .......................................................................................................................... 4
   **Counsel's alleged failure to inform Mr. Scaccia of the methamphetamine's actual weight is unfounded** ................................................................................................ 5
   **Mr. Scaccia was not misled into believing he would receive a shorter sentence** ................. 7
   **Counsel's investigation was not constitutionally deficient or prejudicial** .......................... 10
   **Mr. Scaccia understood the Plea Agreement and the consequences of his guilty plea** ..... 13
**ORDER** ................................................................................................................................. 14

# BACKGROUND

On October 4, 2019, a law enforcement officer initiated a traffic stop on a vehicle Mr. Scaccia was driving.[6] The officer subsequently searched the vehicle and found approximately 1.5 pounds (~680 grams) of methamphetamine and a loaded handgun.[7] Mr. Scaccia admitted the methamphetamine and the handgun were his.[8] Mr. Scaccia was later indicted on one count of Possession of Methamphetamine with Intent to Distribute (500 grams or more of a mixture or substance containing a detectable amount of methamphetamine).[9]

On February 10, 2020, Mr. Scaccia pleaded guilty to the charge and admitted that he possessed and intended to distribute approximately 1.5 pounds of methamphetamine mixture.[10] At his change of plea hearing, Mr. Scaccia affirmatively represented that he had discussed with counsel:

---

[6] Guideline Amended by Order of the Court Presentence Investigation Report ("PSR") ¶ 6 at 3, ECF no. 35 in Criminal Case, filed under seal May 14, 2020.

[7] *Id*.

[8] *Id*.

[9] Indictment, ECF no. 1 in Criminal Case, filed Nov. 13, 2019.

[10] Minute Entry for Proceedings Held Before Magistrate Judge Paul Kohler ("Change of Plea Hearing"), ECF no. 22 in Criminal Case, filed Feb. 10, 2020; Statement by Defendant in Advance of Plea of Guilty and Plea Agreement ("Plea Agreement") ¶ 11 at 3, ECF no. 24 in Criminal Case, filed Feb. 10, 2020.

- the plea offer;

- the consequences of pleading guilty, including the rights he would be waiving and range of sentence he may receive; and

- potential defenses if the case were to go to trial.[11]

Mr. Scaccia also affirmed that:

- he understood the contents of the Plea Agreement, including that the district judge was not bound by the United States Sentencing Guidelines ("USSG") and that the judge's calculation of the USSG may differ from any calculation of counsel;

- he was not promised anything another other than what was stated in the Plea Agreement; and

- he was satisfied with his counsel's explanations and performance.[12]

These affirmative representations also appear in the Plea Agreement Mr. Scaccia signed.[13] On May 14, 2020, Mr. Scaccia was sentenced to a prison term of 60 months and a 60-month term of supervised release.[14]

On September 18, 2020, Mr. Scaccia filed his § 2255 Motion.[15] The § 2255 Motion asserts four claims for relief based on ineffective assistance of counsel.[16] Specifically, Mr. Scaccia claims that his counsel was ineffective because counsel (1) failed to advise him that the weight of the methamphetamine was less than 500 grams; (2) led him to believe he would receive a shorter sentence than he received; (3) failed to conduct a reasonably adequate

---

[11] Change of Plea Hearing.

[12] *Id*.

[13] Plea Agreement ¶¶ 5-9 at 6.

[14] Minute Entry for Proceedings Held Before Judge David Nuffer ("Sentencing Hearing"), ECF no. 36 in Criminal Case, filed May 14, 2020; Judgment in a Criminal Case ("Judgment") at 2-3, ECF no. 40 in Criminal Case, filed August 26, 2020.

[15] § 2255 Motion.

[16] *Id*. at 4-9.

investigation; and (4) failed to ensure that he fully understood the implications of the Plea Agreement and his guilty plea.[17]

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner make seek to "vacate, set aside[,] or correct" the prisoner's sentence if that sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[18] For all motions brought under § 2255, a hearing must be held, "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[19]

Mr. Scaccia claims that his counsel was constitutionally ineffective.[20] A movant "raising an ineffective assistance of counsel claim carries a 'heavy burden.'"[21] To establish ineffective assistance of counsel, a movant must show (1) that counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance was so seriously prejudicial that it prevented a fair trial, or in the absence of such deficient performance, a more favorable result would have occurred.[22]

Mr. Scaccia's claims of ineffective assistance of counsel are not supported by evidence and are plainly contrary to the evidence and record in his underlying criminal case. The briefing on Mr. Scaccia's § 2255 Motion, attached exhibits and evidence, and the record of the underlying criminal case conclusively demonstrate that Mr. Scaccia cannot establish that his

---

[17] *Id.*
[18] 28 U.S.C § 2255(a).
[19] *Id.* § 2255(b).
[20] § 2255 Motion at 4-9.
[21] *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002).
[22] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

4

counsel's performance was constitutionally deficient or prejudicial. Therefore, the merits of Mr. Scaccia's claims may be addressed without an evidentiary hearing.

### Counsel's alleged failure to inform Mr. Scaccia of the methamphetamine's actual weight is unfounded

Mr. Scaccia claims his counsel was constitutionally ineffective for failing to inform him that the actual weight of the methamphetamine he possessed was less than 500 grams.[23] Mr. Scaccia asserts that he would not have enter the Plea Agreement had he known this information.[24] In support of his claim, Mr. Scaccia asserts that the methamphetamine's 1.5-pound weight (~680 grams) included approximately 207.2 grams of packaging materials, and that the actual weight of the methamphetamine was 472.2 grams.[25]

Mr. Scaccia's assertion regarding the methamphetamine's "actual weight" is not supported by evidence and is contrary to the record in his underlying criminal case. Mr. Scaccia attaches a single handwritten page to his § 2255 Motion, which states only "1.04 pounds" and "472.2 pounds."[26] Mr. Scaccia signed the page and also wrote "Found in Attorney Client File."[27] Mr. Scaccia makes no attempt to identify whose handwriting is on the page (other than his own); the source of the handwriting's contents; the reasons for the handwriting; or when the document was created.

Beyond the lack of context for the document, the handwriting itself is not evidence of the "actual weight" of the methamphetamine Mr. Scaccia possessed. The handwriting does not

---

[23] § 2255 Motion at 4.

[24] *Id.*

[25] *Id.*; Petitioner's Reply to government's Response to Motion Pursuant to 28 U.S.C. § 2255 ("Reply") at 4, 7, docket no. 6, filed Jan. 4, 2021.

[26] § 2255 Motion at 13.

[27] *Id.*

mention Mr. Scaccia, "methamphetamine," "actual weight," or "packaging." Nor does the handwriting state "grams." Rather, the only unit of measurement referenced the handwriting is "pounds."[28] It is also not apparent that the handwriting is an attempt at converting 1.04 pounds to grams—1.04 pounds convert to 471.7 grams, not 472.2 grams. Ultimately, the document is unauthenticated and, on its face, does not suggest that the "actual weight" of the methamphetamine Mr. Scaccia possessed was 472.2 grams. The document is not evidence of the methamphetamine's actual weight.

In his Reply, Mr. Scaccia also asserts that the "original investigation report" or "Interview Packet" from the Utah Department of Public Safety (State Bureau of Investigation) will reveal that the actual weight of the methamphetamine he possessed was 472.2 grams.[29] However, Mr. Scaccia did not submit these documents as exhibits and does not present any other evidence capable of supporting this assertion.

Additionally, Mr. Scaccia's assertion regarding the methamphetamine's "actual weight" is contrary to clear record in his underlying criminal case. The Indictment charged Mr. Scaccia with "possess[ion] with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine."[30] Mr. Scaccia affirmatively stipulated and agreed: "Officers determined the methamphetamine mixture I possessed with intent to distribute weight approximately 1.5 pound. I do not dispute that determination."[31] And the original and amended Presentence Investigation Reports state that "[d]uring a search of the vehicle [Mr. Scaccia was driving], the deputed located 1.5 pounds of a white crystal substance that

---

[28] *Id.*

[29] Reply at 7.

[30] Indictment at 1.

[31] Plea Agreement ¶ 11 at 3.

6

field-tested positive for methamphetamine."[32] Nothing in the record of Mr. Scaccia's underlying criminal case suggests that the actual weight of the methamphetamine Mr. Scaccia possessed was anything other than approximately 1.5 pounds (~680 grams).

Mr. Scaccia fails to present evidence supporting his assertion that the actual weight of the methamphetamine he possessed was less than 500 grams. And his assertion is self-serving and contrary to the clear record of his underlying criminal case. It is inherently incredible. Therefore, the record conclusively demonstrates that Mr. Scaccia cannot establish that his counsel was constitutionally ineffective for failing to inform him that the actual weight of the methamphetamine he possessed was less than 500 grams.

**Mr. Scaccia was not misled into believing he would receive a shorter sentence**

Mr. Scaccia claims that his counsel was constitutionally ineffective because counsel led him to believe he would receive a shorter sentence.[33] Specifically, Mr. Scaccia asserts that he would not have pleaded guilty but for counsel advising him that he would receive a 37-month sentence.[34] This assertion is plainly contrary to the affirmative representations Mr. Scaccia made in his Plea Agreement and in open court at his change of plea hearing.

In his Plea Agreement, Mr. Scaccia affirmatively represented that:

- I know that the maximum possible penalty provided by law for Count I of the Indictment . . . is a term of life imprisonment, a minimum mandatory sentence of 10 years, a fine of $10,000,000, a term of supervised release of five years, and any applicable forfeiture.[35]

- I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 35553(a), and that the [c]ourt must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence. I have discussed these procedures with my attorney.

---

[32] Presentence Investigation Report ¶ 6 at 3, ECF no. 29 in Criminal Case, filed May 1, 2020; PRS ¶ 6 at 3.

[33] ¶ 2255 Motion at 5.

[34] *Id*.

[35] Plea Agreement ¶ 2 at 1.

7

- I also know that final calculation of my sentient by the [c]our may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs.[36]

- I understand that the [c]ourt is not bound by the United States' recommendation [that I be sentenced at the low-end of the Sentencing Guideline range determined by the court].[37]

- I understand that I have a right to ask the [c]ourt any questions I wish to ask concerning my rights about these proceedings and the plea.[38]

- This Statement in Advance contains all terms of the agreements between me and the United States; if there are any exceptions, the [c]ourt will be specifically advised, on the record, at the time of my guilty plea of the additional terms.[39]

- No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.[40]

- Neither my attorney nor the United States has promised me that I would receive probation or any other form of leniency because of my plea.[41]

- I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.[42]

- My decision to enter this plea was made after full and careful though; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea.[43]

At the change of plea hearing, the Magistrate Judge thoroughly discussed the terms of the Plea Agreement with Mr. Scaccia.[44] The Magistrate Judge specifically addressed the range of

---

[36] *Id.* ¶ 3 at 2.

[37] *Id.* ¶ 12.e. at 4.

[38] *Id.* ¶ 14 at 5.

[39] *Id.* ¶ 2 at 5.

[40] *Id.* ¶ 3 at 5.

[41] *Id.* ¶ 4 at 6.

[42] *Id.* ¶ 5 at 6.

[43] *Id.* ¶ 7 at 6.

[44] Change of Plea Hearing.

8

sentence that Mr. Scaccia could receive by pleading guilty.[45] The Magistrate Judge also specifically addressed that the district judge was not bound by the USSG and that the judge's calculation of the USSG may differ from any calculation of counsel.[46] Mr. Scaccia affirmatively represented that he understood and that he was not promised anything another other than what was stated in the Plea Agreement.[47]

Mr. Scaccia's guideline range of imprisonment was 70 to 87 months, but the charge also carried a 10-year minimum mandatory sentence.[48] At Mr. Scaccia's sentencing hearing, the government recommended that that the sentence depart and vary downward to 60 months.[49] Mr. Scaccia's counsel argued for a 54-month sentence.[50] And before his sentence was pronounced, Mr. Scaccia was given the opportunity to make a statement.[51] Mr. Scaccia did so, taking full responsibility for the offense.[52] He did not question the length of the sentence counsel recommended and argued for; he did not suggest that he believed his counsel would recommend or argue for a different sentence; and he did not argue for a different sentence. Mr. Scaccia was sentenced to a 60-month prison term,[53] which was 10 months below his guideline range and half the length of the offense's minimum mandatory sentence.

The record of Mr. Scaccia's underlying criminal case conclusively demonstrates that Mr. Scaccia understood the range of his potential sentence, and that the district judge was not bound

---

[45] *Id*.

[46] *Id*.

[47] *Id*.

[48] PSR ¶ 50 at 11.

[49] Sentencing Hearing Transcript at 6:2-15, ECF no. 45 in Criminal Case, filed Apr. 15, 2021.

[50] *Id*. at 8:10-9:21.

[51] *Id*. at 12:19-22.

[52] *Id*. at 12:24-25.

[53] Sentencing Hearing; Judgment at 2.

9

by the USSG or the guideline calculations and recommendations of counsel. Therefore, Mr. Scaccia cannot establish that his counsel was constitutionally ineffective by leading him to believe that he would receive a shorter sentence.

**Counsel's investigation was not constitutionally deficient or prejudicial**

Mr. Scaccia claims that his counsel was constitutionally ineffective because counsel failed to conduct a reasonably adequate investigation.[54] Specifically, Mr. Scaccia asserts that counsel unreasonably relied on the government's open file discovery without seeking formal discovery or conducting any other investigations.[55] Mr. Scaccia further asserts that he met with counsel four or five times throughout the litigation, and that the two spent less than two to three hours together.[56] And Mr. Scaccia asserts that counsel pressed him to accept a plea without developing a working relationship or advising him of viable defenses.[57]

Trial counsel has the duty to make reasonable investigations and make reasonable decisions whether a particular investigation is necessary.[58] But courts do not second guess counsel's strategies after an adverse decision.[59] Rather, courts deferentially scrutinize counsel's performance.[60] "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[61] Thus, the analysis starts with the presumptions that "an

---

[54] § 2255 Motion at 7.

[55] *Id*.

[56] *Id*.

[57] *Id*.

[58] *Strickland*, 466 U.S. at 688.

[59] *Id*. at 689.

[60] *Id*. at 689.

[61] *Id*. at 691.

10

attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy."[62] "[W]here it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'"[63]

In this case, Mr. Scaccia made a formal motion for discovery at Mr. Scaccia's initial appearance.[64] Counsel also received substantial discovery in advance of Mr. Scaccia's guilty plea, including: Mr Scaccia's criminal history; multiple police reports; a cell phone affidavit and warrant; interview packets of Mr. Scaccia and the vehicle's passenger; photographs; the vehicle's impound report; a lab request; and audio files of interviews.[65]

This discovery revealed that Mr. Scaccia was pulled over by law enforcement for driving vehicle that had a darker window tint than is legal in Utah and a suspended registration.[66] Mr. Scaccia's driver's license was suspended, and he was unable to provide the officer with valid proof of insurance for the vehicle.[67] Mr. Scaccia and the vehicle's passenger then gave the officer conflicting information regarding their travel plans.[68] The officer subsequently obtained and executed a search warrant on the vehicle, which revealed 1.5 pounds of methamphetamine

---

[62] *Carver*, 297 F.3d at 1046 (emphasis in original).

[63] *Id*. (emphasis in original).

[64] Minute Entry for Proceedings Held Before Magistrate Judge Paul Kohler, ECF no. 8 in Criminal Case, filed Nov. 21, 2019.

[65] Certificate of Compliance NOC1 and Request for Reciprocal Discovery, ECF no. 14 in Criminal Case, filed Nov. 25, 2019; Certificate of Compliance NOC2 and Request for Reciprocal Discovery, ECF no. 15 in Criminal Case, filed Nov. 26, 2019.

[66] PRS ¶ 6 at 3.

[67] *Id*.

[68] *Id*.

and a loaded handgun.[69] And Mr. Scaccia admitted that the methamphetamine and handgun were his.[70]

Based on the circumstances and the strong weight of evidence against Mr. Scaccia, counsel made an informed and objectively reasonable strategic decision to advise Mr. Scaccia to accept responsibility and seek a significant sentencing reduction, as opposed to pursuing a defense and going to trial. Counsel negotiated a plea deal in which the government would recommend a low-end guideline range sentence despite the offense carrying a 10-year minimum mandatory sentence.[71]

Mr. Scaccia does not identify a viable defense that would suggest his counsel's strategic decisions were unreasonable or prejudicial. And Mr. Scaccia affirmatively represented in his Plea Agreement that:

- I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.[72]

- I am satisfied with my lawyer.[73]

- My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea.[74]

Mr. Scaccia also affirmatively represented at his change of plea hearing that he had discussed with counsel potential defenses if the case were to go to trial.[75]

---

[69] *Id*.

[70] *Id*.

[71] Plea Agreement ¶¶ 2 at 1, 12.e. at 4.

[72] *Id*. ¶ 5 at 6.

[73] *Id*. ¶ 6 at 6.

[74] *Id*. ¶ 7 at 6.

[75] Change of Plea Hearing.

Additionally, Mr. Scaccia may be dissatisfied with the amount of time he spent with counsel during the litigation. But "counsel does not enjoy the benefit of unlimited time and resources."[76] "[T]he Sixth Amendment does not guarantee [a defendant] the right to an attorney who is constantly at his beck and call, and who will come see [the defendant] as the jail to talk about [the] case any time [the defendant] wishes."[77] Mr. Scaccia provides no evidence or argument regarding how the amount of time his counsel spent with him was constitutionally deficient or prejudicial.

Mr. Scaccia's assertions regarding his counsel's investigation are insufficient to establish that counsel was constitutionally ineffective. The assertions are also contrary to the clear record of Mr. Scaccia's underlying criminal case. And this record conclusively establishes that Mr. Scaccia cannot overcome the strong presumption that counsel's informed and strategic decisions were reasonable. Therefore, Mr. Scaccia cannot establish that his counsel was constitutionally ineffective for failing to conduct a reasonably adequate investigation.

**Mr. Scaccia understood the Plea Agreement and the consequences of his guilty plea**

Mr. Scaccia claim his counsel was ineffective because his counsel failed to ensure that he fully understood the implications of the Plea Agreement and his guilty plea.[78] Mr. Scaccia asserts that his counsel failed to inform him of the actual terms of the plea offer and failed to discuss the impact of the plea bargain.[79] This assertion is contrary to clear record of Mr. Scaccia's underlying criminal case.

---

[76] *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).

[77] *United States v. Graves*, No. 06-0178-WS-B, 2007 WL 3232178, *6 (S.D. Ala. Oct. 30, 2007).

[78] § 2255 Motion at 8.

[79] *Id*.

As discussed above,[80] the record provides ample evidence that Mr. Scaccia discussed with counsel and understood his rights, the terms of the Plea Agreement, and the consequences of entering a guilty plea. Mr. Scaccia made affirmative representations of such in his Plea Agreement.[81] And he also affirmative representations of such in open court at his change of plea hearing after the Magistrate Judge discussed his rights, the terms of the Plea Agreement, and the consequences of entering a guilty plea.[82]

The record conclusively demonstrates that Mr. Scaccia discussed with counsel and fully understood the implications of the Plea Agreement and his guilty plea. Therefore, Mr. Scaccia cannot establish that his counsel was constitutionally ineffective for failing to ensure that he fully understood the implications of the Plea Agreement and his guilty plea.

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that Mr. Scaccia's § 2255 Motion[83] is DENIED and DISMISSED with prejudice.

IT IS FURTHER ORDERED that a Certificate of Appealability under Rule 11 of the Rules Governing Section 2255 Proceedings is DENIED.

The Clerk is directed to close the case.

Signed June 25, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[80] *Supra* Discussion at 5-13.
[81] Plea Agreement.
[82] Change of Plea Hearing.
[83] Docket no. 1, filed Sept. 18, 2020.